Complainant, a widow about fifty-nine years of age at the time, in November, 1927, executed to Cicero State Bank a bond and mortgage for $6,000. The bond and mortgage have since been assigned to Elizabeth R. Sanderson, wife of George E. Sanderson, and daughter-in-law of complainant. Defendants, *Page 451 
in the summer of 1937, asked complainant to give Elizabeth a new mortgage for $5,000 in place of the old and threatened foreclosure if she refused. Complainant responded by filing her bill in which she prays that the mortgage be canceled.
The facts are these: In 1927, George Sanderson was heavily indebted to the bank and was called upon to furnish security. He prevailed upon his wife and mother to join with him in a note to the bank for $6,000, and his mother to execute the mortgage in question covering her home in Newark. Her home was already mortgaged to a building and loan association to which there remained due $1,803.90. As part of the Sanderson transaction, the bank paid the association that sum and the mortgage was canceled of record. Complainant thus became principal on the $6,000 note to the extent of $1,803.90 and surety for the balance, $4,196.10; her son was principal debtor in the latter sum and surety for $1,803.90. The bond and mortgage were collateral to the note.
It was agreed between the bank and complainant that she would make to the bank the same payments she had theretofore made to the building and loan association, namely, $40 a month, to be applied to interest and principal on her part of the debt. She made payments for several years, the last on March 13th, 1930, whereupon there remained unpaid of her part of the debt, according to my calculation, $700.
George also made some payments to the bank, but soon his debt began to grow again. November 11th, 1931, complainant, at her son's insistence, executed a second mortgage to the bank for $1,500. This was further security for his debt.
A year and a half later, June 1st, 1933, George, his wife and mother, gave the bank a new collateral note for $7,815.20 to take the place of the old note. It described as the collateral the two mortgages, certain shares of stock which belonged to the defendant, Mrs. Elizabeth Sanderson, and a chattel mortgage made by George and Elizabeth on their household furniture. George was the principal debtor except for the sum of $700 with interest thereon.
On August 15th, 1935, a Mrs. Riggs, who was the mother of Elizabeth Sanderson, died, leaving a will which made substantial *Page 452 
provision for her daughter. Soon the trustees of Mrs. Riggs' estate, out of Elizabeth's share, settled with the bank. The bank's records show under date of May 8th, 1936, "All collateral released — Bond and mortgages totaling $7,500 and $2,500 chattel mortgage and 20 North American Trust shares. We received in full payment and all releases check of Francis Preston, Atty., in the amount of $4,500. We charge reserve for contingencies $1,500."
The promissory note was returned to George Sanderson. A discharge of the second mortgage, $1,500, was executed by the bank and the $6,000 mortgage was assigned to the trustees. The trustees transferred the latter mortgage to Elizabeth August 3d 1936, by an assignment which has not been recorded. Elizabeth's shares which the bank held as collateral were returned to her and the chattel mortgage was surrendered to George and canceled. The whole transaction was accomplishd before May 22d 1936, when George wrote his mother that the bank is "out of the picture forever — finished, done, completed."
I should mention that on June 24th, 1936, complainant signed an "estoppel certificate" at the request of Mr. Preston, the lawyer who was looking after the interests of George, Elizabeth and the Riggs trustees, stating that she had no defense to the $6,000 mortgage. Be it noted that the mortgage had been taken over by the trustees a month earlier. They did not rely on the certificate.
George, Elizabeth and the trustees filed a joint answer to which was subjoined a counter-claim of the trustees for foreclosure of the mortgage, claiming the full amount of principal $6,000 with interest from April 29th, 1936, the date of the assignment to the trustees. Both answer and counter-claim conceal that the mortgage was owned by and had been assigned over to Elizabeth. The counter-claim was abandoned at the close of the hearing.
Complainant attacks the mortgage on two grounds — first that it was secured by imposition, undue influence and the like; second, that it has been paid. The first ground is disproved. She signed reluctantly, but of her own free will. *Page 453 
It is clear that complainant owes on her bond and mortgage $700 with interest thereon from March 13th, 1930. So much is her own debt.
Elizabeth Sanderson, through her trustees, purchased the note and mortgage for $4,500. Of this sum, $958.42 was the amount of complainant's debt with interest thereon to the day of settlement with the bank May 8th, 1936. The balance, $3,541.58, was in compromise of George Sanderson's debt for which complainant and Elizabeth were co-sureties.
The determination of the rights of the co-sureties against each other is not affected by the circumstance that the promissory note was delivered uncanceled to Elizabeth and the bond and mortgage formally assigned to her. Whether she "paid" the debt or "bought" it is immaterial. We have the situation where one surety, Elizabeth, paid more than her share of the common liability and received from the creditor a security which had been given by complainant, her co-surety, namely, the mortgage. She is entitled to the benefit of it, but only to the extent to which she may exact contribution from her co-surety. 50 C.J.286.
The surety who pays the debt may look to his co-surety for reimbursement of half the amount paid. Being equally bound, they shall equally pay. Where the creditor accepts from the surety by way of compromise, less than the full amount of the debt, the right of contribution is measured by the sum which the surety actually pays the creditor and not by the full amount of the debt.
But there is another element in the situation. The bank held as a security for the debt a chattel mortgage on household furniture executed by the principal debtor George Sanderson and his wife. Presumably the furniture belonged to the husband. 30 C.J. 522.
Complainant had a right to the benefit of this security. This security has been canceled, lost through Elizabeth's act, or by her negligence. That fact does not release complainant altogether, but only pro tanto. In the absence of proof to the contrary, the chattel mortgage will be deemed to have been worth its face value, $2,500, and the amount to which complainant must contribute will be reduced *Page 454 
accordingly to $1,041.58. Paulin v. Kaighn, 27 N.J. Law 503;29 N.J. Law 480.
It will be decreed that there is due on complainant's bond and mortgage $700 with interest from March 13th, 1930, and the further sum of $520.79, with interest from May 8th, 1936, and no more; and that defendants give further credit thereon in the amount of complainant's costs of suit to be taxed, including a suitable counsel fee.